Ruffin, C. J.
 

 The principal purpose of the bill is, to throw on the defendant the loss of the sum paid to him by Mr. Mebane, who has brought this suit, as the next friend and guardian of the plaintiffs, all of whom are infants. It is obviously the guardian’s own bill, in the name of the wards, and brought with the view of relieving the guardian from a liability for the sum paid by him, when he, at all events, knew, that the use then made of it was a misapplication of the fund by the person, who was then the plaintiffs’ guardian, and for whom the present guardian was then surety. Thus viewed, the present suit is, certainly, not entitled to much favor, and
 
 *437
 
 as the infants have undoubted redress for any loss in the premises against their present guardian, either as the surety of their former guardian, or as concurring in his breach of trust, there would be much ground for hesitating to grant relief against the defendant, as primarily liable, were it true, that he' also knew that the fund belonged, even in part, to the plaintiffs. Mebane has surely no equity of'his own against the defendants, and unless he were unable to make their legacy good to the plaintiffs — of which there is no suggestion — there seems to be no more propriety in the ward’s insisting on payment from Johnston- instead of Mebarie, then there would be in their thus insisting against Johnston instead of Graves himself, were he upon the spot and fully able to answer the demand. It was the voluntary adt of Mebane, to become paymaster for Graves’ debt to Johnston ; and if, in so doing, he did not, in this Court, become discharged from his debt to the present' plaintiffs, it would be difficult to maintain, that the defendant became chargeable therefor to the plaintiffs, in such a manner" as to be liable to them, even before Mebane, their original-' debtor, and before Graves, the guardian, for- whom Mebane' had bound himself as surety, and in whose
 
 devastavit
 
 he con-' curredl But the Court is relieved from the necessity of considering the case as turning on that point of equity, because' we are of opinion, that the defendant accepted Mebane as his debtor, in the place of Graves, innocently, and without having' any reason to believe that either of the plaintiffs had any interest whatever in the matter. It did not lie on the defendant' to enquire, what motive induced Mebane to assume the debt' of Graves; and, among men of business, such an enquiry would be deemed impertinent and offensive. It was sufficient' for the defendant, that he did not know nor have reason to-suspect, that the other parties were doing- wrong' in taking the' money or legacy of the wards to' pay their guardian’s own debts; and therefore he cannot /be considered as intending to' do wrong, by accepting payment of what one person owed him in property, which belonged’ to another person. Now,, both the answer and the only witness examined in the cause,,
 
 *438
 
 (Graves himself, who is examined for the plaintiffs) state thaS* the whole representation made to the defendant by Graved and Mebane, before and at the giving of the bond, was merely,Mebane owed Graves, and, says Graves in his deposition, “that the money was coming
 
 to me
 
 from the estate of my wife’s grandfather,” whose executor Mebane was. It is true, that in a receipt given at the time for a large sum, which includes-this, Graves says, that the whole sum, $1008 27 was in full of a balance of the legacies to his wife and her brother and sisters from their grandfather, and that Johnston witnessed it. But that neither creates a legal nor a natural presumption,that Johnston knew the contents.
 
 Plummer
 
 v.
 
 Baskerville,
 
 1 Ired, Eq. 252. And the defendant says that he does not remember distinctly, that he did witness a receipt at all, and, if he did, that he has no recollection of the contents of it, o.r that he ever knew them; and Graves is very positive, that Mebane and he only read the paper, and that neither of them made the contents known to the defendant. Under such circumstances the plaintiffs cannot follow this fund into the hands of the defendant. If Mebane had paid the debt to Graves in cash, and: the latter had taken the coin or notes to the defendant in payment, it could not be contended that the plaintiffs could recover merely upon proof, that it was the particular money received for their legacy by their guardian, without something to affect the defendant with a knowledge of it and with bad faith in the transaction; for if they could recover, when the defendant acted without bad faith in receiving payment of a just debt, no- one would be safe in receiving money, and the course of trade would be arrested. There is no difference between that and the present case, in which Mebane gave a security for the money, as if it was simply a debt from himself to Graves or to the defendant, and without allusion in it, or intimation otherwise to the'defendant, of any fact to the contrary. So far, therefore, as respects the sum paid by Mebane to the defendant, the bill must be dismissed; and, as that is the principal subject of controversy, and was, no doubt, of this suit being brought, the bill must be dismissed with costs, to be paid by the plaintiffs’ next friend himself.
 

 
 *439
 
 As to the other part of the .case, the plaintiffs, upon the authority of
 
 Lockhart
 
 v. Phillips, 1 Ired. Eq. 342, and other cases of that kind, were entitled to an account of the bonds belonging to them, which the defendants received from their guardian, and for a decree for what the defendant thus received, that was not applicable nor applied to debts, which the ,plaintiffs ought to have paid. But, as far as those bonds went in discharge of debts, contracted by the plaintiffs for necessaries, or by their guardian for them, it was a proper application of them, and the defendant has, to that extent, the right to retain the bonds or the money received on them. It is stated by the Master, that, in his guardian accounts, Graves annually debited the several plaintiffs with their respective accounts to the defendant, which were transferred to Graves’ own account at the end of the year, and included in his bonds given from time to time to the defendant. But that makes no difference ; because Graves has never paid his bonds thus given on account of the plaintiffs, except, in part, by the transfer of the bonds which he had taken as guardian, and with, which he also charged himself to his wards in his guardian accounts. Therefore, Graves’ bonds are to be regarded merely as securities for the debts really contracted for the plaintiffs, and those debts are to be considered as paid, only by the bonds belonging to the plaintiffs, as far as they extend. The money, which Graves paid either to Johnston or to Harvey .& Gunn, was, as far as appears, Graves’ own money; and therefore, it was applicable to that part of Graves’ debt to those persons,which he contracted on his own account. Hence, the.Master erred in not charging tp each of the plaintiffs his.or her debts to Harvey and Gunn, (which is included in the bond assigned by them to the defendant,) without ded acting therefrom or crediting the p] aintiffs for any part of the payment of $15121, made by Graves on that bond. That the defendant had a right to charge the plaintiffs with that debt, or, rather, their accounts included in the bond, is clear from the consideration, that, while Harvey &, Gunn held it, Graves might have transferred to them bonds? taken by him as guardian, in payment; and, therefore,he
 
 *440
 
 might pay their assignee in like manner. Equity .looks at 'the consideration .of the bond, as constituting the debt, and the bond as merely a.security, or oue of several securities. Now, .j. jg noq1jng t0 the creditors, that upon the accounts between Graves and the plaintiffs, he might have been their debtors, if such was the fact in the case, for they had no means of ascertaining the state of those accounts, and, as they knew that the plaintiffs had contracted so much debt with them, there was an apparent propriety in their receiving payment of those debts of the plaintiffs, in money or bonds belonging to them, in their guardian’s hands. According to the statements in. the master’s reports, there is, perhaps, a small excess of those bonds .over and above the sums due by the plaintiffs, upon their dealings, to the end of the year, 1841, after striking out the credits for parts of the sum of $151 21, paid to Harvey & Gunn. The omission of the master to report on the dealings of 1842, was probably .owing to an opinion, that those dealings did not concern this controversy, because they were subsequent to the transfer of the bonds,' which the plaintiffs are seeking. But that would be a mistaken opinion ; for, as those dealings were prior to this suit, they formed a just demand then against the plaintiffs, and they ought not to have a decree against the defendant to pay them the money, when he has a just ground for a deduction
 
 ox set off.
 

 The only difficulty, which the court has felt in the case, arises out of the circumstance, that the bonds assigned to the defendants, belonged to two of the plaintiffs only; so, that, while the three plaintiffs are together, probably, indebted to the defendant, the balance may be due from one of the plaintiffs only, and to the other two, respectively, a balance may be due from the defendant. But under the circumstances of the case, we have not felt much .embarrassed by that consideration. The plaintiffs have not relied on it, and those, to whom a balance may be due, could not, perhaps, insist on a decree in a case, in which they have imprudently united with a person, who has no claim against the defendant, in a joint suit for a matter, in which all three of the plaintiffs have several inter
 
 *441
 
 ests. Indeed, we suppose the point of importance to the plaintiffs is, whether there is, upon the whole, a balance due from the defendant; for, as the same person is guardian for all the plaintiffs, and there is no suggestion that each has not a competent estate in the guardian’s hands to pay his or her debt, neither plaintiff could'lose by the application of the effects of one fouthe benefit of the other. It could only affect the costs,and they have already been disposed of, and, moreover, ought not to be allowed to one plaintiff, who unites with another, against whom there should be a decree for costs. The court would therefore have no hesitation in ordering the guardian, in case a balance be found against one of the plaintiffs, to bring it into court out of the estate of that plaintiff, in order to answer a sum, that may be found due from the defendant to any other plaintiff. We suppose that these declarations will satisfy the parties as to the principles on which, in the opinion of the court, the case turns, and that they can adjust the accounts without the expense of a further reference. But if it should turnout otherwise, the cause must be sent back to the master, to make the proper enquiries, and state the accounts as now directed.
 

 Per Curiam, Decreed accordingly.